### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 09 B 10250 |
| | ) | Chapter 13 |
| AUDREY ZEOLIA VANHOOK, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the objection of Audrey Zeolia Vanhook (the "Debtor") to the claim filed by Darryl T. Jenkins (the "Creditor"). For the reasons set forth herein, the Court sustains the Debtor's objection to the claim. The claim will be allowed and treated as a general unsecured claim, not as a priority unsecured claim as asserted by the Creditor.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

### II. FACTS AND BACKGROUND

On March 25, 2009, the Debtor filed a voluntary Chapter 13 bankruptcy petition. Thereafter, the Debtor's modified plan was confirmed on May 29, 2009. The plan indicates that there are no allowed priority claims other than those of the Debtor's attorney. Pursuant to the modified plan, general unsecured claimants are to receive ten percent of their allowed claims. On July 6, 2009, the Creditor filed a proof of claim in the amount of $55,000, plus interests and costs,

-2-

as a priority claim under 11 U.S.C. § 507(a) for domestic support obligations. The Debtor argues that the claim should not be afforded priority under § 507(a)(1) because, in fact, it is not for domestic support obligations.

The facts underlying the Creditor's claim are as follows. The Debtor and Creditor were married on July 31, 1988. Four years later, on June 2, 1992, a judgment for dissolution of their marriage was entered in the Circuit Court of Cook County, Illinois. (Resp. to Objection to Claim, Ex. A.) In that judgment for dissolution, the state court found that two children were born to the Debtor and Creditor. (*Id.* ¶ 4.) The judgment awarded the Debtor custody of the children, and required the Creditor to pay the Debtor child support in the sum of $184.50 bi-weekly. (*Id.* ¶¶ B & D.) That amount was subsequently increased.

In September of 1999, after the Creditor had paid child support for seven years, he discovered that he was not listed as the father of the two children on the birth certificates. Instead, the Debtor had listed the father of the children as "unknown." After making this discovery, the Creditor filed a two-count petition in the state court seeking, among other things, the court to modify the judgment for dissolution and vacate its finding of paternity. (*Id.* at Ex. B.) The Creditor also sought reimbursement of the child support payments he had made to the Debtor. (*Id.*) It is this claim for reimbursement at issue here. The Creditor contends that the claim retains that same characterization and classification as when he paid those monies to the Debtor.

In October of 2000, after paternity tests were conducted, the Creditor was excluded as the biological father of the children. (*Id.* at Exs. C & D.) Thereafter, on February 25, 2003, the state court entered a judgment against the Debtor and in favor of the Creditor in the amount of $55,000, plus costs and interest, for the wrongfully paid child support. (*Id.* at Ex. E.)

-3-

The Creditor contends that this judgment constitutes a domestic support obligation because it resulted from a dissolution of marriage and represents the repayment of child support he paid to the Debtor. The Creditor further maintains that the proceedings to enforce this judgment confirm its nature. Specifically, the Creditor provided numerous orders that were entered by the state court which required the Debtor to be current in all payments to him for the repayment of child support. (*Id.* at Exs. F-P.) Those orders held the Debtor in contempt for failure to make the payments required by the judgment entered in 2003; placed the Debtor under electronic home monitoring for her failure to comply with the state court orders, but stayed the enforcement of that order; and required her to remain current in all repayments of child support. (*Id.*)

The parties waived their opportunity for an evidentiary hearing. The Court took the matter under advisement based on the filed papers.

### III. **APPLICABLE STANDARDS**

#### A.    **The Allowance of Claims or Interests**

Section 502 of the Bankruptcy Code governs the allowance of claims or interests in a bankruptcy case. 11 U.S.C. § 502. Claims filed in a bankruptcy case are prima facie presumed valid under § 502(a) and are prima facie proof of their validity under Federal Rule of Bankruptcy Procedure 3001(f). *Conn. Gen. Life Ins. Co. v. Schaumburg Hotel Owner Ltd. P'ship (In re Schaumburg Hotel Owner Ltd. P'ship)*, 97 B.R. 943, 950 (Bankr. N.D. Ill. 1989). Specifically, Bankruptcy Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with

-4-

these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed R.

Civ. P. 3001(f); *see also In re Salem*, 465 F.3d 767, 779 (7th Cir. 2006).

Claim objectors carry the initial burden to produce some evidence to overcome the

rebuttable presumption of validity. *In re Dugar*, 392 B.R. 745, 749 (Bankr. N.D. Ill. 2008); *In*

*re O'Malley*, 252 B.R. 451, 455-56 (Bankr. N.D. Ill. 1999).  The evidence set forth by the

objecting party must be of a probative force equal to that of the allegations asserted in the claim.

*Surf Walk Condo. Ass'n v. Wildman*, 84 B.R. 511, 515 (N.D. Ill. 1988). "Once the objector has

produced some basis for calling into question allowability of a claim, the burden then shifts back

to the claimant to produce evidence to meet the objection and establish that the claim in fact is

allowable." *O'Malley,* 252 B.R. at 456.  However, the ultimate burden of persuasion always

remains with the claimant to prove entitlement to the claim. *In re Watson*, 402 B.R. 294, 297

(Bankr. N.D. Ind. 2009); *In re Nejedlo*, 324 B.R. 697, 699 (Bankr. E.D. Wis. 2005); *In re*

*Octagon Roofing*, 156 B.R. 214, 218 (Bankr. N.D. Ill. 1993). As the objecting party, the Debtor

carries the initial burden to overcome the rebuttable presumption that the Creditor has a valid

claim.

The Court has reviewed the Creditor's claim and determines that it constitutes prima facie

evidence of the validity and amount of the claim. *See In re McCoy*, 355 B.R. 69, 72 (Bankr. N.D.

Ill. 2006).  Based upon the applicable standards stated *supra*, the Debtor, as objector, has the

burden of presenting evidence to rebut the claim's prima facie validity.  *See id.*  Neither the

validity nor the amount of the claim is challenged.  Instead, the Debtor objects to the Creditor's

claim on the ground that the debt owed by the Debtor is not a domestic support obligation and,

therefore, should not be afforded priority status pursuant to § 507(a)(1). The Debtor contends that

-5-

the claim should be treated as a general unsecured claim.  The dispute focuses on whether the claim retains the classification of child support as it was originally characterized when the Creditor paid the monies to the Debtor until the truth was learned that he was not the father of the children.

### B.    11 U.S.C. § 507(a): Priority Expenses and Claims

Section 507(a) of the Bankruptcy Code sets forth, in descending order, ten categories of expenses and claims that are entitled to priority payment in a bankruptcy case.  11 U.S.C. § 507(a).  This priority schedule is designed to assure payment to certain classes of claims by requiring that they be paid before other claims are satisfied.  *New Neighborhoods, Inc. v. W. Va. Workers' Comp. Fund*, 886 F.2d 714, 718 (4th Cir. 1989); *In re Olga Coal Co.*, 194 B.R. 741, 745 (Bankr. S.D.N.Y. 1996).  However, the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among the creditors in the prescribed order of priority as Congress has legislated.  *See Joint Indus. Bd. of Elec. Indus. v. United States*, 391 U.S. 224, 228 (1968).  Thus, provisions granting priority in bankruptcy are narrowly construed.  *Olga Coal*, 194 B.R. at 745; *In re Dynacircuits, L.P.*, 143 B.R. 174, 176 (Bankr. N.D. Ill. 1992); *In re O.P.M. Leasing Servs., Inc.*, 60 B.R. 679, 680, 683 (Bankr. S.D.N.Y. 1986).  "To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer." *Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 953 (1st Cir. 1976).

-6-

Among the classifications under § 507, the Code grants first priority to "domestic support

obligations." 11 U.S.C. § 507(a)(1).[1] In particular, § 507(a)(1)(A) provides, in part, as follows:

> (a) The following expenses and claims have priority in the
> following order:
>> (1) First:
>>> (A) Allowed unsecured claims for domestic
>>> support obligations that, as of the date of the filing
>>> of the petition in a case under this title, are owed to
>>> or recoverable by a spouse, former spouse, or child
>>> of the debtor, or such child's parent, legal guardian,
>>> or responsible relative, without regard to whether
>>> the claim is filed by such person. . . .

11 U.S.C. § 507(a)(1)(A). Under this provision, the Code affords priority status to qualifying

domestic support obligations that, as of the date of the filing of the bankruptcy petition, are owed

to or recoverable by a spouse, former spouse, or child of the debtor, or to such child's parent, legal

guardian, or responsible relative. *Id.*

### C.   Domestic Support Obligations

The priority granted by § 507(a)(1)(A) extends to certain allowed unsecured claims for

"domestic support obligations." The term "domestic support obligation" is defined in 11 U.S.C.

§ 101(14A), which provides in pertinent as follows:

> (14A) 'domestic support obligation' means a debt that accrues
> before, on, or after the date of the order for relief in a case under

---

[1] When the Code was originally enacted, it did not accord any priority status to domestic support obligations. 4 Alan N. Resnick & Henry J. Somer, *Collier on Bankruptcy* § 507.03[1], at 507-21 (16th ed. rev. 2009). The Bankruptcy Reform Act of 1994 added § 507(a)(7), which created a seventh priority position in favor of certain claims for alimony, maintenance, and support. *Id.* Subsequently, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective in cases commenced on or after October 7, 2005, established domestic support obligations as the highest priority for distribution in bankruptcy cases. *Id.*

this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law . . . that is–

    (A) owed to or recoverable by–

        (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

        (ii) a governmental unit;

    (B) in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

    (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of–

        (i) a separation agreement, divorce decree, or property settlement agreement;

        (ii) an order of a court of record; or

        (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

    (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

The definition in this section sets forth four elements that must be satisfied for a domestic support obligation to arise. *Wis. Dep't of Workforce Dev. v. Ratliff*, 390 B.R. 607, 613 (E.D. Wis. 2008); *Levin v. Greco (In re Greco)*, 397 B.R. 102, 106 (Bankr. N.D. Ill. 2008), *rev'd on other grounds*, 415 B.R. 663 (N.D. Ill. 2009). Those elements are as follows: (1) the payee of the obligation must be either a governmental unit or a person with a particular relationship to the debtor or a child of the debtor, as defined in paragraph (A); (2) the nature of the obligation must

-8-

be support, as defined in paragraph (B); (3) the source of the obligation must be an agreement,

court order, or other determination, as defined in paragraph (C); and (4) the assignment status of

the obligation must be consistent with paragraph (D). *Id.* Here, the second element is the focus

of this dispute.

The effect of domestic support obligations being entitled to priority status varies among

the different chapters of the Bankruptcy Code. In Chapter 13 cases, such as the case at bar, 11

U.S.C. § 1322(a)(2) states that the plan must provide for the full payment, in deferred cash

payments, of all claims entitled to priority under § 507, except to the extent that the holder of a

particular claim agrees to a different treatment. 11 U.S.C. § 1322(a)(2). Thus, domestic support

obligations are entitled to priority treatment and must be paid in full during and under a Chapter

13 plan. *In re Uzaldin*, 418 B.R. 166, 172 (Bankr. E.D. Va. 2009); *In re Johnson*, 397 B.R. 289,

295-96 (Bankr. M.D.N.C. 2008); *In re Poole*, 383 B.R. 308, 312 (Bankr. D.S.C. 2007).


## IV. **DISCUSSION**

The Court finds that the debt owed to the Creditor by the Debtor does not constitute a

domestic support obligation and, therefore, the Creditor's claim will not be afforded priority status

under § 507(a)(1)(A). The debt resulted when the Creditor obtained a judgment against the

Debtor for monies he had paid to her as child support pursuant to the judgment of dissolution.

The state court subsequently determined he was not the biological father of the Debtor's children

and ordered repayment of the monies he had paid to the Debtor as child support. The succeeding

order found that the earlier determination compelling child support payments from the Creditor

was in error and that the Debtor should refund those payments.

-9-

The Court finds that the Creditor has not demonstrated all four of the requisite elements necessary under § 101(14A) for the debt to be considered a domestic support obligation. The Creditor has shown only three of the four elements: (1) he is a former spouse of the Debtor (§ 101(14A)(A)); (2) the debt was established before the date of the order for relief in this case by reason of an order of the state court (§ 101(14A)(C)); and (3) the debt was not assigned to a nongovernmental entity (§ 101(14A)(D)). The Creditor has failed to establish that the Debtor's underlying obligation to repay him is in the nature of alimony, maintenance, or support under § 101(14A)(B).

The Court finds that the judgment debt is not in the true nature of child support. Rather, it is merely a money judgment awarded to the Creditor for his wrongful payment of child support to the Debtor because it was determined that he was not the father of the children. The ensuing debt owed to the Creditor as the result of the wrongfully paid child support should not retain the same character as when the Creditor originally and mistakenly paid the monies to the Debtor. Several cases support this conclusion.

In a case similar to the facts at bar, a court held that a claim filed by a debtor's former spouse, which resulted from his overpayment of child support, was not entitled to priority. *In re Lutzke*, 223 B.R. 552 (Bankr. D. Or. 1998) (discussing former § 507(a)(7) which afforded priority to claims for alimony, maintenance, or support). There, the court stated that the overpayment debt should not retain the same character as when the claimant originally paid the sums to the debtor. *Id.* at 554. The court noted that Congress intended § 507(a)(7) to provide additional protection for creditors and their dependents "in need of support." *Id.* at 555. The court determined that there was no evidence of need demonstrated by the former spouse. *Id.* at 554.

-10-

In another case, *Lankford v. Drinkard (In re Drinkard)*, 245 B.R. 91 (Bankr. N.D. Tex. 2000), the court held that the debtor's obligation to reimburse her former spouse, the child support obligor, for support he overpaid was not in the nature of alimony, maintenance, or support within the meaning of the non-dischargeability provision of 11 U.S.C. § 523(a)(5). *Id.* at 94. The court noted that the judgment did not benefit the obligee or the child. *Id.* Rather, it benefitted only the obligor. *Id.* The court opined that the judgment was "simply a money judgment given to reimburse [the creditor] for overpayment of child support." *Id.*

These cases, however, do not represent the universal view. *See Norbut v. Norbut (In re Norbut)*, 387 B.R. 199 (Bankr. S.D. Ohio 2008) (finding that debtor's former spouse's overpayment of spousal support to her was non-dischargeable); *Allen Co. Child Support Enforcement Agency v. Baker (In re Baker)*, 294 B.R. 281 (Bankr. N.D. Ohio 2002) (finding that because creditor's overpayments of child support were made under the parties' original support order, and the creditor was under a legal duty to make such payments, those overpayments fell within the discharge exception for support); *Kassicieh v. Mascotti*, Nos. 05AP-684, 06AP-1224, 2007 WL 2800374 (Ohio Ct. App. Sept. 27, 2007) (finding that overpayment of child support made pursuant to a court order was excepted from discharge under § 523(a)(5)).

While all of these cases may be instructive, they are distinguishable from the matter at hand. In these cases, the creditors made overpayments of child or spousal support. Here, the Creditor did not make overpayment of a support obligation. Instead, he wrongfully paid the Debtor child support. It was not determined, until seven years after the Creditor began paying the child support, that he was not the biological father of the children and, therefore, not legally obligated to pay such support.

-11-

In the final analysis, the focus should be on the true nature of the Debtor's debt owed to the Creditor and whether it should be classified as child support. It would be the height of illogic to conclude that the Creditor's claim against the Debtor should be classified as a priority claim for child support to be refunded to him when, in fact, it was determined that he was not the father of the children. To arrive at this conclusion would compound the error made by the parties and the state court in its original determination to tax the Creditor with child support payments. He should never have been assessed child support payments. That he was erroneously charged with and paid that support does not transform his claim for a refund into a priority classification to which it does not properly belong. The Court concludes that the Debtor's repayment obligation to the Creditor is not in the nature of alimony, maintenance, or support. Accordingly, the claim is not entitled to priority status under § 507(a)(1)(A).

## V. CONCLUSION

For the foregoing reasons, the Court sustains the Debtor's objection to the claim of the Creditor. The claim will be allowed and treated as a general unsecured claim.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

**ENTERED:**

DATE: 3/24/10

John H. Squires
United States Bankruptcy Judge

cc:    See attached Service List

## <u>SERVICE LIST</u>

### <u>Audrey Zeolia Vanhook</u>
### Bankruptcy No. 09 B 10250

Alex Wilson, Esq.
Law Offices of Peter Francis Geraci
55 East Monroe Street, Suite 3400
Chicago, IL 60603

Glenn B. Stearns
Chapter 13 Standing Trustee
4343 Commerce Court, Suite 120
Lisle, IL 60532

Roderick D. Thomas, Esq.
Law Office of Roderick D. Thomas
31 West Downer Place, Suite 201
Aurora, IL 60506

William T. Neary, United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604